## Vollman's Appeal.    Lang's Estate.

Where the regulations of a beneficiary society prescribe a certain form in which money is to be paid to the beneficiary, in making a new direction as to its payment, this form must be followed, and the disposition of it cannot be changed by will.

November 5th 1879.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ.    STERRETT and GREEN, JJ., absent.

Appeal from the Orphans' Court of *Allegheny county :* Of October and November Term 1879, No. 346.

Appeal of George Vollman and J. C. Breitlauch from the decree of the court in the matter of their petition as executors.

The Grand Lodge of the Ancient Order of United Workmen was incorporated by that title by the legislature, March 9th 1871, and by its charter was authorized to create, hold and disburse a beneficiary fund for the relief of the members and their families, of the lodges established by said corporation, under such regulations as might be adopted by it.    The corporation adopted what was called " the beneficiary article," by which the order guaranteed to such members of the third (or master workman's) degree, $2000, to be paid to such person or persons as the member might, while living, direct.    Each member, upon applying for the third degree, was required to enter into a contract, by which he became entitled to participate in the beneficiary fund, and to receive a beneficiary certificate for the sum of $2000, to be paid at his death to such person as he might designate ; in consideration of which he bound himself to pay all beneficiary assessments or forfeit the certificate, and to accept it subject to such laws, rules and regulations, as said order had then or might thereafter adopt.    The beneficiary article also provided that any member desiring at any time to make a new direction as to its payment, might do so by authorizing such change in writing on the back of his certificate in the form prescribed (printed on the back of each certificate), attested by the recorder, with the seal of the lodge attached, and by the payment to the grand lodge of the sum of fifty cents.

Schiller Lodge, No. 46, was a subordinate lodge, organized under the grand lodge, and of it Charles F. Lang was a member in the third degree.    On June 1st 1878, a beneficiary certificate was issued to him, which upon its face specified that, at his death, the amount was to be paid to Jacob F. Lang's surviving children. This certificate was issued subject to the conditions set forth in the beneficiary articles.

Jacob F. Lang was a brother of Charles F. Lang, and at or about the issuing of the certificate, Charles F. Lang delivered it to Jacob, in whose custody it remained until after the death of Charles.

[Vollman's Appeal.]

Charles died in July 1879, having first made a will, by which he devised the money to come from the lodge as follows: To Mary, Charles and Albert Lang, the children of Jacob F. Lang, each $300; to Mary Lang, wife of Jacob F. Lang, $200; to George Vollman, $300; for the erection of tombstones over himself and wife and J. F. Lang, his deceased father, $300. The residue was not disposed of specifically. Charles F. Lang left neither wife nor children surviving him.

It was claimed that the designation in the certificate that it should be paid to the surviving children of Jacob F. Lang, was but a testamentary act, and sufficiently revoked by the last will of which appellants are executors, and that the executors were entitled to receive the money. The lodge obtained leave to pay the money into court, and appellants applied for an order to take out the fund. The court below awarded it to L. H. Smith, guardian of Mary, Charles and Albert Lang, who were the only children of J. F. Lang, and dismissed the petition of appellants, inter alia, saying:

"As between Charles F. Lang and the children of Jacob Lang, the policy of life insurance described in this case became the subject of an executed gift to the latter from its date. There was no condition, qualification nor power of revocation appearing on the face of the policy by means of which the assured could change the beneficiaries. When the policy was issued he had done everything which was then in his power to make the gift complete. It is true he might subsequently refuse to pay the premiums; but, having paid them, they necessarily enured to the benefit of the donees. The gift was absolute. There is nothing in the laws of the order which issued the policy from which an argument can be drawn that the gift is executory and therefore revocable. The 14th section of the article upon which the counsel for the executors relied, is a mere regulation of the mode of transfer of policies, and was intended exclusively for the benefit of the insurers. It gave no quality of assignability to the policy. Such regulations are common to life insurance companies, and no case has been found in which they were treated as reservations of the right of revocation. * * *

The effect of the attempted change of beneficiaries in the present case, if valid, would be to defeat the declared object of the order in issuing the policy. That object was to aid the family of the assured. The title to the policy would, if the contention of the executors be sustained, vest in the assured and pass to his executors at his death, for the benefit first of creditors, and second of legatees. The family of the assured might never receive any benefit whatever. McBride's Appeal, 22 P. F. Smith 480. And there would thus be no "guarantee" against want so far as the family of the assured was concerned. The executors can, therefore, have no title to the fund."

From this decree the executors took this appeal.

[Vollman's Appeal.]

*Henry Meyer* and *J. S. Ferguson*, for appellants.—The whole transaction indicates that it was regarded by Charles F. Lang and the order as a testamentary disposition of the sum named in the certificate. The money was only to be paid at Lang's death; at least by complying with section 14 of the beneficiary article, he could have appointed other payees. If, then, the certificate was a testamentary disposition of the sum of $2000, it was revoked by Lang's last will and testament, formally executed, probated and registered, unless such revocation is defeated by his failure literally to comply with the provisions of section 14. But those provisions were clearly intended for the protection of the order; and, in the absence of any injury, a will executed in conformity with the statute certainly could not be defeated by a mere society regulation.

*C. C. Dickey* and *J. McF. Carpenter*, for appellees.—The constitution and articles of a voluntary association are a law as to its members : Thompson *v.* Adams, 7 W. N. C. 281. The intention was to make a life policy payable to these children, and said intention was not only expressed, but executed. The contract was complete, and the money, when due, was payable to them : Connecticut Mutual Life Insurance Co. *v.* Burroughs, 34 Conn. 305.

The judgment of the Supreme Court was entered November 17th 1879,

PER CURIAM.—The appropriation made by Lang of the moneys payable at his death on the beneficiary certificate, could be revoked by him only in the mode appointed in the regulations adopted by the Grand Lodge of the Ancient Order of United Workmen, by whom it was issued. They had an unquestionable right to make such a regulation. The regulation was that "any member holding a beneficiary certificate desiring at any time to make a new direction as to its payment, may do so by authorizing such change in writing, on the back of his beneficiary certificate in the form prescibed,—attested by the recorder, with the seal of the lodge attached, and by the payment to the Grand Lodge of the sum of fifty cents." No doubt it was adopted with a view to prevent the lodge from being involved in litigation with outside claimants. If Lang could revoke it by will—there is no reason why he could not do so by parol. If it was his so absolutely that he could dispose of it by will, it would undoubtedly be liable for his debts. One object of this regulation was to prevent this, and to secure it to such persons as he might desire. We think the decree of the Orphans' Court was right.

Decree affirmed and appeal dismissed at the costs of the appellant.